UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MICHAEL ELERATH ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 18-4058** |
| **JASON VITORINO ET AL.** | **SECTION: "H"** |

## ORDER AND REASONS

Before the Court is Defendants' Motion to Dismiss and Compel Arbitration (Doc. 12). For the following reasons, the Motion is **GRANTED**.

## BACKGROUND

This lawsuit arises from the sale of a shopping center in Thibodaux, Louisiana. Plaintiffs Michael and Andrea Elerath owned the shopping center property ("Property") before the sale.[1] In the fall of 2016, they began negotiating with Defendant Jason Vitorino, a Texas real estate agent, to sell the Property.[2] On November 10, 2016, Plaintiffs and Vitorino agreed that he would represent them as their real estate agent in the sale of the Property. The

---

[1] *See* Doc. 3-2. Andrea Elerath appears in this matter both individually and as assignee of Nona Scheurer, Ron Sheurer, and Terry Scheurer. The Scheurers also had an ownership interest in the shopping center before the sale.
[2] Vitorino acted as an agent for Defendant J. Vitorino Enterprises, L.L.C., d/b/a Vitorino Group. Vitorino was the president of the company. Doc. 3-2 at 4. The Court will refer both to the individual and the company interchangeably as "Vitorino."

"Representation Agreement" ("Agreement") called for a sale price of $2.05 million for the Property, and it provided Vitorino with a 5% commission upon completion of the sale. Notably, the Agreement contained an arbitration clause and a Louisiana choice-of-law provision.[3] On March 13, 2017, Vitorino sold the Property to a third party for $1.875 million, taking a $45,375 commission. The Property, therefore, sold for $130,000 less than the price called for in the Agreement.

Unhappy with Vitorino's services, Plaintiffs filed a suit in Louisiana's 17th Judicial District Court for Lafourche Parish on March 7, 2018, seeking damages from Vitorino.[4] Plaintiffs allege claims of unjust enrichment, negligence, and violations of Louisiana's Unfair Trade Practices Act.

On April 18, 2018, Vitorino removed the suit to this Court on diversity grounds.[5] On May 16, 2018, Vitorino filed a Motion to Dismiss and Compel Arbitration under Federal Rule of Civil Procedure 12(b)(6) and the Federal Arbitration Act.[6] Plaintiffs oppose.[7]

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim for relief that is plausible on its face."[8] A claim is "plausible on its face" when the pleaded facts allow the court to "draw reasonable inference that the defendant is liable for the misconduct alleged."[9] A court must accept the complaint's factual allegations as true and must "draw

---

[3] Doc. 14-1 at 6–7.
[4] Doc. 3-2.
[5] *See* Doc. 3.
[6] 9 U.S.C. §§ 1–16. *See also* Doc. 12.
[7] *See* Doc. 14.
[8] Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007)).
[9] *Id.*

2

all reasonable inferences in the plaintiff's favor."[10] The court need not, however, accept as true legal conclusions couched as factual allegations.[11] To be legally sufficient, a complaint must establish more than a "sheer possibility" that the plaintiff's claims are true.[12] If it is apparent from the face of the complaint that an insurmountable bar to relief exists and the plaintiff is not entitled to relief, the court must dismiss the claim.[13]

## **LAW AND ANALYSIS**

The Federal Arbitration Act provides:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement.[14]

When deciding whether to compel arbitration pursuant to an arbitration agreement, courts in the Fifth Circuit apply a two-part test.[15] First, a court must determine that the parties agreed to arbitrate the relevant dispute.[16] To meet this element, a valid agreement to arbitrate must exist, and the dispute in question must fall within the scope of the arbitration agreement.[17] This first element stems from the Federal Arbitration Act's directive that district courts must order parties to arbitration "upon being satisfied that *the making of the agreement for arbitration* . . . is not in issue."[18] "While there is a strong federal

---

[10] Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232 (5th Cir. 2009).
[11] *Iqbal*, 556 U.S. at 678.
[12] *Id.*
[13] *Lormand*, 565 F.3d at 255–57.
[14] 9 U.S.C. § 4.
[15] *See* Janvey v. Alguire, 847 F.3d 231, 240 (5th Cir. 2017).
[16] *Id.*
[17] *See id.*
[18] 9 U.S.C. § 4. (emphasis added).

3

policy favoring arbitration, the policy does not apply to the initial determination whether there is a valid agreement to arbitrate."[19] Instead, courts apply state contract law to determine the validity of the arbitration agreement at this stage of the inquiry.[20] In diversity cases like this one, federal courts apply the substantive law of the state in which the federal court sits.[21] The parties do not dispute that Louisiana law applies here.[22]

Second, once satisfied that the making of the arbitration agreement is not in issue such that there exists a valid agreement to arbitrate, and that the dispute in question falls within the scope of that arbitration agreement, a court must then decide whether any federal statute or policy renders the relevant claim nonarbitrable.[23] If no federal statute or policy renders the claim nonarbitrable, the court must compel arbitration.[24]

Here, Plaintiffs raise two arguments to show that the "making" of the arbitration agreement is "in issue" such that this Court should not compel arbitration.[25] First, Plaintiffs argue the arbitration agreement was not "made" because all parties affected by it—the co-owners of the Property—did not sign the Agreement. Defendants respond that because Plaintiff Michael Elerath signed not individually but on behalf of the other co-owners, they are bound by the arbitration clause even though they did not sign the Agreement themselves. Second, Plaintiffs argue the arbitration agreement was not "made" because it is part of an Agreement that is an unenforceable relative nullity

---

[19] *Janvey*, 847 F.3d at 240 (quoting Banc One Acceptance Corp. v. Hill, 367 F.3d 426, 429 (5th Cir. 2004).
[20] Klein v. Nabors Drilling USA L.P., 710 F.3d 234, 236 (5th Cir. 2013).
[21] *See* Salve Regina Coll. v. Russell, 499 U.S. 225, 226 (1991) (citing Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)).
[22] In fact, the Agreement includes a Louisiana choice-of-law provision. Doc. 14-1 at 7.
[23] *Janvey*, 847 F.3d at 240.
[24] *See* 9 U.S.C. § 4.
[25] *See* Doc. 14 at 3–5.

4

under Louisiana law.[26] The Court will address each of Plaintiffs' arguments separately.

## I. The Parties Agreed to Arbitrate this Dispute

### a. A Valid Arbitration Agreement Exists

#### i. All Plaintiffs are Bound by the Agreement

Non-signatories "may be bound by or acquire rights under an arbitration agreement under ordinary state-law principles of agency or contract."[27] Louisiana Civil Code article 797 provides that "[o]wnership of the same thing by two or more persons is ownership in division."[28] "The consent of all co-owners is required for the lease, alienation, or encumbrance of the entire thing held in division."[29] Here, the non-signatory co-owners effectively argue that they never consented to the sale of the Property by Vitorino.[30]

The Fifth Circuit in *Will-Drill Resources, Inc. v. Samson Resources Co.* held that "no agreement of any kind was reached" when all co-owners of a mineral interest failed to sign a contract of sale that contained an arbitration clause.[31] From there, the court reasoned that "[w]here no contract exists, there is no agreement on anything, including an agreement to arbitrate."[32] This led

---

[26] The Court expresses no opinion about whether the Agreement as a whole is in fact a relative nullity under Louisiana law.
[27] Grigson v. Creative Artists Agency L.L.C., 210 F.3d 524, 532 (5th Cir. 2000) (citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)).
[28] LA. CIV. CODE art. 797.
[29] *Id.* art. 805.
[30] There is no evidence in the Record of an agreement between Michael Elerath and the non-signatories giving him the express authority to sell the Property on their behalf. Nevertheless, the Agreement expressly provides that "the undersigned Seller has the legal right to sell the Property and to bind any other individuals and entities that may have an ownership interest in the Property." Doc. 14-1 at 3. The evidence shows that Michael Elerath signed the Agreement and that he did so on behalf of all the co-owners of the Property. Doc. 14-1 at 6–8.
[31] Will-Drill Resources, Inc. v. Samson Resources Co., 352 F.3d 211, 212 (5th Cir. 2003).
[32] Id. at 215.

5

the court in *Will-Drill* to vacate a district court's order compelling arbitration on the ground that no agreement to arbitrate existed.[33]

This case is distinguishable from *Will-Drill*. Under Louisiana law, "a non-signatory to an agreement containing an arbitration provision may be bound by that provision under accepted theories of agency or contract law, such as equitable estoppel."[34] One theory of estoppel recognized by Louisiana courts is "direct benefit estoppel."[35] "Direct benefit estoppel applies when a non-signatory plaintiff sues to enforce a contract containing an arbitration agreement, yet seeks to avoid the arbitration provision in the same agreement."[36] The justification for the principle is that the non-signatory "cannot have it both ways; he cannot rely on the contract when it works to his advantage and then repudiate the contract when it works to his disadvantage."[37]

Here, the non-signatory Plaintiffs want to have it both ways. Their shares from the sale of the Property by Vitorino long ago flowed into their bank accounts. Even though they technically did not plead a breach of contract claim against Vitorino, that is the essence of what they allege. They argue that Vitorino was unjustly enriched because he failed to abide by the terms of the Agreement, but also that they are not bound by the arbitration clause within the Agreement. Even assuming the non-signatory Plaintiffs never gave Michael Elerath express authority to sell the Property on their behalf, the non-

---

[33] *Id.* at 220.
[34] Lakeland Anesthesia, Inc. v. United Healthcare of Louisiana, Inc., 871 So. 2d 380, 393 (La. App. 4 Cir. 2004). *See* Courville v. Allied Professionals Ins. Co., 218 So. 3d 144, 148 n.3 (La. App. 1 Cir. 2017) ("A non-signatory to a contract containing an arbitration provision may be bound by that provision under accepted theories of agency or contract law.").
[35] *See* Horseshoe Entm't v. Lepinski, 923 So. 2d 929, 935 (La. App. 2 Cir. 2006) (citing *Lakeland*, 871 So. 2d at 394).
[36] *Id.*
[37] *Courville*, 218 So. 3d at 148 n.3.

6

signatory Plaintiffs are barred from denying their assent to the Agreement under the direct benefit estoppel doctrine.[38] Both Elerath and the non-signatory Plaintiffs are bound by the arbitration provision in the Agreement.

### ii. Claiming the Agreement as a Whole is a Relative Nullity Does Not Challenge to the "Making" of the Arbitration Agreement

Working as a real estate broker in Louisiana requires a Louisiana real estate license.[39] Plaintiffs allege that Vitorino is a Texas real estate broker not licensed in Louisiana. They further allege that Vitorino violated Louisiana law by brokering the sale of their Property without a Louisiana real estate license.[40] This violation, they argue, renders the Agreement relatively null and unenforceable, putting the "making" of the arbitration agreement in issue.

In *Pinpoint Enterprises v. Barnett Financial Services, Inc.*, another section of this court considered this exact issue.[41] In *Pinpoint*, the court held that a nullity challenge to a contract of sale based on a real estate broker's failure to comply with state licensing requirements went to the enforcement of the agreement *as a whole*, not to the making of *the arbitration agreement*, and thus granted the defendants' motion to compel arbitration.[42] The court in *Pinpoint* explained its reasoning as follows:

---

[38] Of course, if the non-signatory Plaintiffs *did* provide Michael Elerath with such authority, the entire estoppel discussion would be moot, and the non-signatory Plaintiffs could not claim they were not bound by the Agreement.

[39] *See* LA. REV. STAT. § 37:1436.

[40] Louisiana Administrative Code title 46 § 5101 allows out-of-state real estate agents to cooperate with in-state real estate agents by filing certain documentation with the state's Real Estate Commission. LA. ADMIN. CODE tit. 46 § 5101. Plaintiffs also allege Vitorino never filed the required paperwork with the Commission that would have allowed him to engage in real estate work in Louisiana alongside an in-state agent. Doc. 14 at 2.

[41] Pinpoint Enterprises v. Barnett Fin. Servs., Inc., No. 04-80, 2004 WL 831142, at *2 (E.D. La. Apr. 14, 2004).

[42] *Id.* at *3–4 (emphasis added).

7

> This curious result, in which a court may review a challenge to *a part of* a contract (i.e. the existence of an agreement to arbitrate) but not *the whole* contract, arises from the language of the Federal Arbitration Act. Section 4 of the Federal Arbitration Act permits federal courts to adjudicate a dispute "which goes to the 'making' of *the agreement to arbitrate*," but the Act does not generally permit a federal court to consider a party's challenge to the validity or interpretation of the *entire contract*. A court thus may adjudicate a challenge to the validity of the making of an *agreement to arbitrate*, but the Act reserves for the arbitrator challenges to the validity or interpretation of *the contract as a whole* where the parties do not separately challenge "the making and performance of the agreement to arbitrate."[43]

Here, Plaintiffs seek to invalidate the Agreement as a whole on relative nullity grounds. Such a challenge does not speak to the making of the arbitration agreement within the contract. The Fifth Circuit has enforced clauses compelling arbitration in similar cases that involved challenges by parties to the legality of entire contracts as opposed to challenges to the making of the arbitration agreements within those contracts.[44] For the same reasons explained in *Pinpoint*, the Court finds that Plaintiffs' challenge to the arbitration agreement based on Vitorino's alleged failure to comply with Louisiana licensing laws does not constitute an objection to the making of the arbitration agreement. It should instead be characterized as a challenge to the enforceability of the Agreement as a whole. As such, the making of the arbitration agreement is not in issue, and a valid agreement to arbitrate exists.

---

[43] *Id.* at *2 (internal citations omitted) (quoting Prima Paint Corp. v. Flood & Conklin Manufacturing Co., 388 U.S. 395, 403–04 (1967)).

[44] *See* Lawrence v. Comprehensive Bus. Servs. Co., 833 F.2d 1159, 1162 (5th Cir. 1987) (enforcing arbitration clause notwithstanding claim that contract containing clause violated Texas law); Mesa Operating Limited Partnership v. Louisiana Intrastate Gas Corporation, 797 F.2d 238, 244 (5th Cir. 1986) (enforcing arbitration clause despite claim that contract containing clause was *void ab initio*).

8

### b. The Dispute in Question Falls Within the Scope of the Arbitration Agreement

The arbitration clause in the Agreement provides: "All disputes arising between the Parties with respect to the subject matter of this Representation Agreement (including but not limited to the payment of commissions as provided herein) shall be settled exclusively by final, binding arbitration."[45] The dispute between the parties in this case centers around the commission paid to Vitorino. The arbitration clause expressly covers this dispute.

Because a valid agreement to arbitrate exists and the dispute in question falls within the scope of that agreement, this Court finds that the parties agreed to arbitrate the entirety of this dispute.

## II. No Federal Statute or Policy Renders the Claim Nonarbitrable

Plaintiffs do not point to any federal statute or policy that would render their claim nonarbitrable. This Court knows of none that exist.

This case involves a dispute arising from a valid agreement to arbitrate that concerns subject matter within the scope of the arbitration clause. No federal statute or policy has been brought to the attention of this Court that would render Plaintiffs' claim nonarbitrable. To the contrary, federal law and policy strongly support compelling arbitration.[46] When all the issues raised by a plaintiff's claims belong before an arbitrator, "[t]he weight of authority clearly supports dismissal of the case."[47] That is the case here.

---

[45] Doc. 14-1 at 6.
[46] Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 25 (1991) (noting that the Federal Arbitration Act manifests "a 'liberal federal policy favoring arbitration agreements'") (quoting Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24 (1983)).
[47] Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992) (collecting cases).

## CONCLUSION

For the foregoing reasons, Defendants' Motion is **GRANTED**. Plaintiffs' claims are **DISMISSED** with prejudice, and it is ordered that the parties arbitrate this dispute.

New Orleans, Louisiana this 2nd day of January, 2019.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**